No. 54,861

STATE OF KANSAS, *Appellee,* v. CLIFTON LINWOOD LASHLEY, *Appellant.*

(664 P.2d 1358)

Opinion filed June 10, 1983.

*Douglas D. Depew,* of the Depew Law Firm, of Neodesha, argued the cause, and *Harry L. Depew,* of the same firm, was with him on the briefs for the appellant.

*Richard G. Oliver,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Kurt F. Kluin,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from the district court of Wilson County, Kansas, by the defendant Clifton Lashley based upon a conviction under the felony murder rule.

Kelsie Robbins was a resident of Bella Vista, Arkansas. Sometime early in February, 1981, he took in as a houseguest Clifton Linwood Lashley. Robbins and Lashley were joined by Marla Longworth, who also lived for a period of time at the Robbins home. Early in June of 1981, Robbins, Longworth and Lashley drove to Fredonia, Kansas, to meet with one Kenneth Berry, a friend of Lashley. Mr. Robbins believed he was to participate in a bank robbery in Kansas with Lashley, Longworth and Berry. The trip to Kansas was for the purpose of planning that robbery.

At the first meeting in Fredonia, Kansas, outside the presence of Robbins, Berry and Lashley, in the presence of Longworth, planned to murder Robbins. At this meeting Kenneth Berry supplied Lashley with a .25 caliber automatic, the murder weapon. Shortly after the meeting, Robbins, Lashley and Longworth returned to Bella Vista, Arkansas.

Longworth testified that the next day she, while packing a suitcase, saw Lashley place in that suitcase a sterling silver tray belonging to Robbins. Robbins, Longworth and Lashley then left Bella Vista, Arkansas and drove to Fredonia, Kansas where they met Berry. Berry entered the vehicle and directed Robbins, who was driving, to a wooded area just north of Neodesha, Kansas. All four of the individuals walked a considerable distance through very rough, bushy terrain. Lashley, upon reaching a secluded area, pulled out the gun previously supplied him by Kenneth Berry and attempted to shoot Robbins. The gun jammed. Lashley handed the gun to Berry who corrected the faulty mechanism and returned the gun to Lashley. There is conflicting testimony as to the sequence in which the shots were fired at Robbins. Longworth testified that Lashley fired several shots into Robbins, then handed her the gun. She turned her head and fired one shot into the ground. Berry testified that Lashley fired a single shot and then Longworth emptied the clip at Robbins. Berry robbed the body of its personal effects and the three returned to the automobile belonging to the deceased and left the State of Kansas.

After leaving the wooded area in Wilson County, the three drove south towards Oklahoma City. In Oklahoma City, Berry attempted to sell some of the jewelry belonging to the deceased Robbins, one of those items being a 1970 class ring with the initials K. R. Thereafter, the trio left Oklahoma City and proceeded south to Gainsville, Texas, where additional jewelry belonging to the deceased was sold for the sum of $1,200.00 to a Mr. Clyde Bond.

At this point Kenneth Berry became apprehensive and at his first opportunity left Lashley and Longworth and returned to Kansas, where he initially told a story of being kidnapped by Lashley and Longworth. Berry, however, eventually came forward with the complete story. After Berry's departure, Lashley and Longworth proceeded west and eventually ended up in

Phoenix, Arizona, using the names of Lonnie and April Sanders. While in Phoenix, Arizona, Lashley pawned a Black Hills gold man's ring which had belonged to Robbins.

Lashley was tried to the jury on a charge of premeditated murder or first degree felony murder based upon the theft of property belonging to the deceased Robbins, having a value of more than $100.00. Lashley was convicted by the jury of murder in the first degree under the felony murder rule and now appeals that conviction.

Defendant's preliminary examination was completed December 9, 1981, by a district magistrate judge. The district magistrate judge, after hearing the evidence, stated:

"The court, after hearing the evidence, finds that there's probable cause to believe that the offense of Count II, first degree murder and Count III, felony murder has been committed and that there's reason to believe that the defendant committed the crimes, and that he be bound over to appear before a district judge, or associate district judge for arraignment, . . . ."

December 21, 1981, a Notice of Appeal of the decision of the district magistrate judge binding the defendant over for arraignment was filed. The Notice of Appeal stated no reason or statutory authority for the appeal. A new preliminary examination was set for February 8, 1982, and a second judge assigned to hear the matter. February 8, 1982, Judge Richard L. Ashley ruled that the "binding over" at the preliminary hearing was not a final order and the court had no jurisdiction to hear the appeal and ordered the defendant to appear February 11, 1982, for arraignment.

Defendant first attempted to justify an appeal from the district magistrate judge's ruling under K.S.A. 1982 Supp. 60-2103a, which provides:

"(a) In actions commenced in the district courts of this state all appeals from orders or final decisions of a district magistrate judge shall be heard by a district judge or associate district judge. Except as otherwise provided by law, such appeals shall be taken by notice of appeal specifying the order or decision complained of and shall be filed with the clerk of the district court within ten (10) days after the entry of such order or decision."

Appeals contemplated by K.S.A. 1982 Supp. 60-2103a are from orders or final decisions of a district magistrate judge's rulings in civil actions. The court, therefore, had no jurisdiction to hear an appeal under that procedure. Failing under K.S.A. 1982 Supp. 60-2103a, defendant states his right to appeal the district magis-

trate judge's ruling after the preliminary examination was provided by K.S.A. 1982 Supp. 22-3609a. It states in part:

"(1) A defendant shall have the right to appeal from any judgment of a district magistrate judge. The administrative judge shall be responsible for assigning a district judge or associate district judge for any such appeal. The appeal shall stay all further proceedings upon the judgment appealed from.

"(2) An appeal to a district judge or associate district judge shall be taken by filing a notice of appeal with the clerk of the court. No appeal shall be taken more than 10 days after the date of the judgment appealed from.

"(3) The clerk of the district court shall deliver the complaint, warrant and any appearance bond to the district judge or associate district judge to whom such appeal is assigned. The case shall be tried *de novo* before the assigned district judge or associate district judge."

The order binding the defendant over for arraignment was not a "judgment" from which a defendant has a right to an appeal. Judgments that can be appealed under K.S.A. 1982 Supp. 22-3609a are convictions in traffic or misdemeanor cases and those convictions rendered pursuant to K.S.A. 1982 Supp. 22-2909(c).

Prior to July 1, 1970, an accused was required to raise the question of the sufficiency of a preliminary examination prior to arraignment by a plea in abatement. The plea of abatement as a procedural device was abolished by K.S.A. 22-3208(1). Since July 1, 1970, the sufficiency of a preliminary examination may be challenged only by a motion to dismiss or grant appropriate relief. Failure to raise the question by such motion constitutes a waiver and precludes review on appeal. Like the plea in abatement, review of the district court's order denying the motion to dismiss must be limited to the issues advanced by the motion. Issues not raised by the motion and, therefore, not presented to the court are deemed waived.

Defendant had no right to appeal the binding over for arraignment order of the district magistrate since it was not a judgment which could be appealed. The court was correct in denying the defendant's appeal of the judge's order binding over the defendant for arraignment.

Defendant next contends it was error to allow the prosecutor to call a witness to testify, knowing that the witness will claim the privilege not to testify in the presence of the jury. The witness, Kenneth Berry, had participated in the theft and killing of Robbins.

Kenneth Berry was announced as the next witness for the State. The prosecutor stated the witness was in the Law En-

forcement Center under guard and would have to be brought to the court. At the bench, defendant's attorney informed the judge that the prosecution knew the witness would refuse to testify. The judge indicated he had been informed earlier, by Berry's attorney, Berry would invoke the "Fifth." Berry appeared in court and in the presence of the jury announced he would not testify. The judge had Berry sworn as a witness; he informed the witness of his right not to incriminate himself under the Constitution. The judge asked Berry if he intended to invoke his Fifth Amendment right. Berry affirmed he would not testify and was released as a witness.

A prosecuting attorney who in a trial asked witnesses, who had previously entered pleas of guilty, incriminating questions concerning their relationship with the defendant, having knowledge that the witnesses would invoke the privilege against self-incrimination, is not guilty of misconduct where he initially did not believe that the witnesses could properly invoke their privilege against self-incrimination, reasoning with some justification that the witnesses' pleas of guilty to the same charge would erase any testimonial privileges as to the conduct invoked. The witnesses had testified at the trial and invoked their privilege only as to questions that would incriminate them. The United States Supreme Court held that although the witnesses asserted their Fifth Amendment right against self-incrimination several times during their testimony, the assertion of their rights was at most cumulative support for an inference well established by the unprivileged portion of their testimony. In absence of prosecutorial misconduct no reversible error was found. *Namet v. United States*, 373 U.S. 179, 10 L.Ed.2d 278, 83 S.Ct. 1151 (1963).

In *State v. Crumm*, 232 Kan. 254, 654 P.2d 417 (1982), the defendant attempted to call a witness who was not charged for participating in the offense for which the defendant was being tried, but the possibility of charges being brought against that witness were very real. The witness had allegedly given a prior statement, which had not been shown to be voluntary, and there had been no determination that the prior statement was admissible against the witness by a court. The witness, through counsel, had clearly informed the judge and trial counsel the witness would not answer questions that might incriminate her, and

would refuse to answer based on the Fifth Amendment right. The trial court should not allow the defendant to call a witness and have that witness be forced to claim the right to refuse to answer questions that would be incriminating. The Kansas Supreme Court ruled:

"It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege." *State v. Crumm*, 232 Kan. 254, Syl. ¶ 1.

Here the prosecution was attempting to lay the foundation for the use of prior testimony given by Berry at the defendant's preliminary examination. K.S.A. 1982 Supp. 60-460(c) provides for the use of prior testimony in a trial if there was a right and opportunity to cross-examine the witness at a previous hearing. To utilize Berry's testimony at the preliminary in the trial, the court must find the witness is unavailable and that the defendant's right of confrontation was protected at the prior hearing. Where a witness claims his privilege against self-incrimination he is not available for cross-examination within the meaning of K.S.A. 1982 Supp. 60-460(a). *State v. Oliphant*, 210 Kan. 451, 453-54, 502 P.2d 626 (1972).

From the record it is apparent that Berry had a right, under the Fifth Amendment to the United States Constitution, to refuse to answer questions that would incriminate him. Berry had testified at the defendant's preliminary examination and had been subject to cross-examination. Berry was not available to testify as a witness having exercised his right to refuse to incriminate himself. In order for the prosecution to introduce Berry's prior statement, a proper foundation for admissibility was required. Berry was not called for the sole purpose of allowing the jury to observe the witness' claim of privilege against self-incrimination but to have his prior testimony presented to the jury as evidence at the trial. The jury was aware of Berry's involvement in the crime when the transcript of his prior testimony was read in court. The procedure followed in this case was not error requiring reversal but harmless error since it would not have changed the outcome of defendant's trial.

In the future trial courts should not proceed in this manner. Claims of privilege should be determined outside the presence of the jury, since undue weight may be given by a jury to a claim of privilege. If the court determines that the prior statement is

admissible, then the jury should be told simply *that the witness is not available* before the prior testimony is read into the record.

Defendant's third contention is that the preliminary examination testimony of Kenneth Berry should not have been admitted at the trial since defendant did not have the opportunity to confront and cross-examine Berry at the preliminary examination. Berry testified July 20 and 21, 1981, at the defendant's preliminary examination. Counsel for the defendant conducted a very detailed and complete cross-examination of the witness. Defense counsel asked the witness more than 300 questions and at the close of his cross-examination stated: "That's all the questions I have of this witness."

This court has recognized that under both the United States and the Kansas Constitutions, a defendant charged with a crime is entitled to the right of confrontation. The Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Kansas Constitution guarantee the right of the accused to confront the witness against him. The primary reason underlying the constitutional "confrontation" rule is to allow a defendant charged with a crime an opportunity to cross-examine the witnesses against him. *State v. Terry,* 202 Kan. 599, 451 P.2d 211 (1969).

K.S.A. 1982 Supp. 60-460(c) provides for the use of prior testimony in a trial:

"Subject to the same limitations and objections as though the declarant were testifying in person, (1) testimony in the form of a deposition taken in compliance with the law of this state for use as testimony in the trial of the action in which offered or (2) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action, or in a deposition taken in compliance with law for use as testimony in the trial of another action, when (A) the testimony is offered against a party who offered it in the party's own behalf on the former occasion or against the successor in interest of such party or (B) the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered, but the provisions of this subsection (c) shall not apply in criminal actions if it denies to the accused the right to meet the witness face to face."

To allow testimony of a witness given at a prior hearing, two conditions must be shown: (1) A witness has given testimony at a previous judicial proceeding against the same defendant and the witness was subject to cross-examination by the defendant; (2)

that the witness who gave the prior testimony was not available to testify in the present hearing. *State v. Terry,* 202 Kan. 599. A declarant who claims his privilege of self-incrimination at the trial is not available as a witness. This exception has been explained as arising from practical necessity and justified on the ground that the right of confrontation initially afforded provides substantial compliance with the purposes behind the confrontation requirement.

The court did not err in admitting the testimony of Berry given at the preliminary examination.

Defendant next contends that the court erred in giving a "last minute aiding and abetting" instruction. The State requested the court to instruct on the theory that defendant aided and abetted after both sides had rested their case. Defendant admits in his brief: "The defendant is well aware that the current state of the law in Kansas would appear to permit the action of the state." Defendant requested that the rule should be changed based upon modern concepts of fair play and due process.

K.S.A. 22-3201 requires that the information be a plain and concise written statement of the essential facts constituting the crime charged. The information must enable the accused to know the nature and the cause of the charge to form a defense. *State v. Loudermilk,* 221 Kan. 157, 159, 557 P.2d 1229 (1976). An aider and abettor of a crime is guilty, the same as a principal. *State v. Payton,* 229 Kan. 106, 622 P.2d 651 (1981). No separate offense is created by instructing on aiding and abetting.

Kenneth Berry testified by use of the preliminary examination transcript that the defendant fired the first shot at Robbins. Marla Longworth testified the defendant shot Robbins several times, then handed the gun to her. Longworth stated she shot once into the ground. This testimony was sufficient for the jury to conclude that the defendant may not have killed Robbins but aided and abetted Longworth, or defendant killed Robbins. There was sufficient evidence to instruct the jury on aiding and abetting. *State v. Bryant,* 228 Kan. 239, 246, 613 P.2d 1348 (1980). The jury was not required to accept either version in toto. From the totality of the evidence the jury could have reasonably concluded that Longworth was the principal and that the defendant aided and abetted Longworth or that the defendant was the principal, aided and abetted by Longworth.

We do not agree that our present law is required to be changed at this time. The trial court's instruction on aiding and abetting after both parties had rested was correct.

Defendant contends that jury instructions on felony murder and theft were inadequate, improper, and confusing. Defendant's complaints are directed to instructions numbered 18 and 19. These two instructions stated:

"No. 18

"The defendant is also charged with the crime of felony murder in the first degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant killed Kelsie Robbins;

"2. That such killing was done maliciously;

"3. That it was done in the commission of a felony; and

"4. That this act occurred on or about the 3rd day of June, 1981, in Wilson County, Kansas.

"No. 19

"You have been previously instructed that to find defendant guilty of a felony murder, one of the elements you must find is that it was done in the commission of a felony.

"The felony charged in this case is theft, and to establish this felony, each of the following must be proved:

"1. That Kelsie Robbins was the owner of the property in question;

"2. That the defendant obtained unauthorized control over the property;

"3. That defendant intended to deprive Kelsie Robbins permanently of the use or benefit of the property;

"4. That the property was of a value of more than $100.00; and

"5. That on or about June 3, 1981, the property passed through Wilson County, Kansas."

In charging the jury in a criminal case, it is the duty of the district court to define the offense charged, stating to the jury the essential elements of the crime, either in the language of the statute or in appropriate and accurate language of the court. *State v. Nesmith*, 220 Kan. 146, Syl. ¶ 3, 551 P.2d 896 (1976).

Instruction 18 indicates that the State must show the killing was done maliciously to convict the defendant under the felony murder rule. Neither party objected at the time of trial or raised that erroneous requirement on appeal. Its inclusion could only benefit the defendant by requiring the State to overcome a greater burden. Its inclusion was harmless and would not change the outcome of the trial.

Defendant claims Instruction 18 is improper for the reason the felony committed is not specified. Instruction 19 follows In-

struction 18 and specifies that the felony charged is theft and sets forth the necessary elements to prove the crime of felony theft. The propriety of the instructions to the jury is to be gauged by consideration of the whole; each instruction is to be considered in conjunction with all the other instructions in the case. *State v. Korbel*, 231 Kan. 657, 647 P.2d 1301 (1982).

Defendant claims Instruction 19 is improper on the ground it does not require that control be exerted in Wilson County, Kansas, or in the State of Kansas. Due to the circumstances of this case, it was necessary that the normal PIK Instruction be modified to fit the facts. Here, defendant, Berry and Longworth, while in Wilson County, Kansas, agreed to steal Robbins' personal property in the State of Arkansas and kill Robbins to hide the theft. Defendant and Longworth returned to Arkansas with Robbins. While in Arkansas the defendant placed Robbins' property in Robbins' car trunk. Defendant, Longworth and Robbins returned to Wilson County, Kansas. Defendant, Berry and Longworth completed the conspiracy when Robbins was killed and the balance of his personal property, including his car, was taken.

The court modified Instruction 19 to show that the theft in this case was a continuing crime. The theft was not completed until Robbins was dispatched and the balance of his property taken. Normally, venue and the place of the trial is in the county where the crime was committed. K.S.A. 22-2602; *State v. Lovelace*, 227 Kan. 348, 351, 607 P.2d 49 (1980). K.S.A. 21-3104 provides:

"(1) A person is subject to prosecution and punishment under the law of this state if:

"(a) He commits a crime wholly or partly within this state; or

"(b) Being outside the state, he counsels, aids, abets, or conspires with another to commit a crime within this state; or

"(c) Being outside the state, he commits an act which constitutes an attempt to commit a crime within this state.

"(2) An offense is committed partly within this state if either an act which is a constituent and material element of the offense, or the proximate result of such act, occurs within the state. If the body of a homicide victim is found within the state, the death is presumed to have occurred within the state."

K.S.A. 22-2610 provides:

"When property taken in another state by theft or robbery shall have been brought into this state, the venue is in any county into or through which such property shall have been brought."

Defendant contends the theft was completed in Arkansas prior to the killing of Robbins; therefore, Instructions 18 and 19 were erroneous. Robbins' property stolen in Arkansas was brought into Wilson County, Kansas. Time, distance, and the causal relationship between the underlying felony and killing are factors to be considered in determining whether the killing is a part of the felony and therefore subject to the felony murder rule. Whether the underlying felony had been abandoned or completed prior to the killing so as to remove it from the ambit of the felony murder rule is ordinarily a question of fact for the jury to decide. *State v. Hearron,* 228 Kan. 693, Syl. ¶ 2, 619 P.2d 1157 (1980). When the evidence is conclusive, as a matter of law, and the murder occurred within the res gestae of the crime, the trial court need not instruct that determination of whether the murder occurred within the res gestae is a fact question for the jury. *State v. Rider, Edens & Lemons,* 229 Kan. 394, Syl. ¶ 5, 625 P.2d 425 (1981).

The court properly instructed under the facts of this case. The court's instructions were not inadequate, improper, or confusing.

Defendant's last contention is theft, not being inherently dangerous in and of itself to human life, cannot be used as the underlying felony for the basis of the felony murder rule. The Kansas felony murder statute provides:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation or *committed in the perpetration or attempt to perpetrate any felony.*" K.S.A. 21-3401. Emphasis supplied.

A literal reading of this statute would find any felony to be sufficient to support a charge of felony murder if a causal relation exists. The purpose of the statute is to deter those engaged in felonies from killing negligently or accidentally, and that doctrine should not be extended beyond its rational function which it was designed to serve. To invoke the felony murder rule there must be proof that a homicide was committed in the perpetration of or an attempt to perpetrate a felony and that the collateral felony was one inherently dangerous to human life. *State v. Smith,* 225 Kan. 796, 799-800, 594 P.2d 218 (1979).

In *State v. Underwood,* 228 Kan. 294, 615 P.2d 153 (1980), the defendant was convicted of felony murder (K.S.A. 21-3401). The underlying felony which was used to classify the homicide as

felony murder was unlawful possession of a firearm. K.S.A. 21-4204(1)(*b*). Underwood had been convicted of stealing a bicycle in 1974. Underwood had stood by while another individual cut the bolt securing a bicycle so that individual could ride away on the bicycle. Underwood was later apprehended with the bolt cutter in his pocket. Underwood entered a plea of nolo contendere to felony theft, and was thereby prohibited from owning or possessing certain firearms. On October 28, 1978, Underwood and others were involved in an altercation. Several individuals involved in the fight were armed with guns and knives. Underwood, believing a friend was endangered by an individual armed with a shotgun, took a pistol from a friend and shot and killed the person with the shotgun. Underwood was convicted of felony murder and appealed.

This court in *State v. Underwood*, 228 Kan. 294, reviewed the prior law. In a 4-3 decision the court departed from the law as stated in *State v. Moffitt*, 199 Kan. 514, 431 P.2d 879 (1967). The court determined that unlawful possession of a firearm by a convicted felon, when viewed in the abstract, is not a felony inherently dangerous to human life for the purpose of the felony murder rule, and would not support a felony murder charge. The court then determined K.S.A. 1979 Supp. 21-3110(8) contained a definition of forcible felonies which included treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery, aggravated sodomy and any other felony which involves the use or threat of physical force or violence against any person. Unlawful possession of a firearm was not included in the enumerated forcible felonies nor did it fit within the catch-all phrase at the end of the definition. The court determined that the underlying felony in the felony murder rule must be a forcible felony, one inherently dangerous to human life.

Defendant claims that felony theft (K.S.A. 21-3701) is not a forcible felony and therefore is not an underlying felony required for a charge under the felony murder rule. There are three statutes that deal with the offense of theft: (1) theft—K.S.A. 21-3701; (2) theft of lost or mislaid property—K.S.A. 21-3703; and (3) theft of services—K.S.A. 21-3704. If the value of the stolen item or service is $100.00 or more, then the offense is a felony under each statute.

Theft, K.S.A. 21-3701, became effective July 1, 1969. The legislature consolidated the offenses of larceny, embezzlement, false pretense, extortion, and receiving stolen property into the single crime of theft. The prior law was unduly complex, and created unnecessary problems in pleading and proof. All involved the common element of obtaining property by dishonest means. Though consolidated into a single statute of theft, the former offenses retained a portion of their former identity in the subdivisions contained within K.S.A. 21-3701.

Theft is not one of the specified forcible felonies included in K.S.A. 21-3110(8). Does theft therefore fall into the categories of *"any other felony which involves the use or threat of physical force or violence against any person?"* Emphasis supplied. Viewing the separate statutes and the subdivisions of theft in the abstract, we can determine that the following crimes are not inherently dangerous to human life: (1) theft of lost or mislaid property—K.S.A. 21-3703; (2) unlawful deprivation of property—K.S.A. 21-3705; (3) theft, obtaining by deception control over property—K.S.A. 21-3701(*b*); and (4) theft by control over stolen property knowing the property to have been stolen by another—K.S.A. 21-3701(*d*).

K.S.A. 21-3701 incorporates two sections that are, when viewed in the abstract, offenses that are inherently dangerous to human life: (1) theft by obtaining or exerting unauthorized control over property—K.S.A. 21-3701(*a*); and (2) theft by obtaining control over property by threat—K.S.A. 21-3701(*c*).

Theft by obtaining or exerting unauthorized control over property (K.S.A. 21-3701[*a*]) is generally committed by stealth, but secrecy, or the owner's ignorance, is not a necessary element of the crime. The thief's intent is to deprive the owner of his property and to appropriate the property to his own use. The act of taking may be open, with a reckless disregard of the consequences, and even with knowledge of the owner.

Theft—obtaining by threat control over property (K.S.A. 21-3701[*c*]), is taking property by putting the owner in fear of personal injury or injury to his property through fear induced by threats. The taking is without the voluntary consent of the owner and the owner allows the property to be taken as a result of actual fear induced by threats calculated to excite a reasonable apprehension of harm.

The offense of theft set forth in the court's instruction is a felony when viewed in the abstract inherently dangerous to human life and is a proper felony to sustain a conviction for murder in the first degree under the felony murder rule. However, we wish to emphasize that theft may be the underlying felony in a charge of felony murder only in cases where the discovery of the thief during the course of the theft results in the death of a person.

The judgment of conviction on the felony murder charge is affirmed.