No. 73,397

STATE OF KANSAS, *Appellee*, v. STANTON SHANE HOLT, *Appellant*.

(917 P.2d 1332)

Opinion filed May 31, 1996.

*Julie A. Gorenc*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Chris E. Biggs*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of numerous offenses, including two counts of first-degree murder; multiple counts of aggravated burglary, burglary, felony theft, misdemeanor theft, and criminal damage to property; and other offenses. Defendant timely appeals his convictions, claiming jury instruction errors, insufficient evidence, and double jeopardy violations.

Junction City, Kansas, experienced a series of residential burglaries between March 4 and April 30, 1993. The burglaries occurred at 16 different residences; 2 residences were burglarized more than once. The most serious crimes resulting from the series of burglaries were the first-degree murders of James Ashley and Mabel Price. The defendant was shot during an attempted burglary, arrested, and charged with the various offenses. In addition to the 2 counts of first-degree murder, defendant was convicted of 2 counts of aggravated robbery, 8 counts of aggravated burglary, 11 counts of burglary, 9 counts of felony theft, 8 counts of misdemeanor theft, 16 counts of criminal damage to property, and 1 count each of conspiracy to commit aggravated burglary, attempted aggravated burglary, criminal trespass, unlawful possession of a firearm, possession of cocaine, and possession of drug paraphernalia.

The defendant's trial lasted 2½ weeks. During the trial, the defendant testified he had not committed the crimes charged but had occasionally remained outside a burglarized house while other individuals committed the crimes. The defendant explained to the jury how various items of stolen property happened to be in his possession. A detailed review of the evidence at trial is unnecessary; the discussion of the issues on appeal will set out the necessary facts.

### Improper Jury Instruction

The home of James Ashley was burglarized on four separate occasions between March 26 and April 20, 1993. On April 25, Ashley's home was burglarized a fifth time, property was taken, and

he was killed. On April 29, 1993, Mabel Price's home was burglarized, property was taken, and she was killed. The defendant was charged with two counts of first-degree premeditated murder and, in the alternative, first-degree felony murder based on the underlying crimes of aggravated robbery or aggravated burglary, in the deaths of Ashley and Price.

At the instructions conference, the defendant's counsel objected to a jury instruction that all participants to an underlying felony are principals to a felony murder when death occurs. The court noted the defendant's objection and gave the instruction, which stated: "All participants to an underlying felony are principals to a felony murder when death occurs. The rules of felony murder thus apply equally to all participants." This instruction quotes *State v. Chism*, 243 Kan. 484, Syl. ¶ 5, 759 P.2d 105 (1988). The defendant concedes on appeal that the instruction is a correct statement of the law and that the evidence required the giving of the instruction. However, the defendant contends the instruction was defective because it did not specify the underlying crime for the felony murder and its elements; therefore, the instruction relieved the State of its burden of proof and denied the defendant due process of law.

In support of his argument on appeal, the defendant cites *State v. Linn*, 251 Kan. 797, 840 P.2d 1133 (1992). In *Linn*, the defendant was charged with aggravated burglary based on the underlying crime of "a felony or theft." At trial, the defendant requested that the aggravated burglary instruction specify only theft as the underlying felony, but the State argued that the evidence was the defendant intended to commit the offenses of robbery, aggravated battery, and theft when he entered the dwelling. The aggravated burglary instruction given by the court stated that to find the defendant guilty, the jury must find the defendant entered or remained in a house " 'with the intent to commit a felony or theft therein.' " 251 Kan. at 800. The specific felony intended was not set out. During deliberations, the jury asked the court to define "felony." The court informed the jury that a felony is a crime for which punishment may be in excess of 1 year in a state penitentiary. On appeal, the defendant did not contend that the evidence was

insufficient to find an intent to commit a theft, but argued that the jury's request for the definition of "felony" indicated that it found him guilty based on an intent to commit an undefined felony rather than a theft; therefore, reversal of that conviction was required.

In determining that the defendant was deprived of his constitutional right to a fair trial, the *Linn* court stated:

"An instruction as to the offense of aggravated burglary is defective unless it specifies and sets out the statutory elements of the offense intended by an accused in making the unauthorized entry. Under the circumstances here, the trial judge's failure to state the specific underlying felony or felonies and their elements prevented the jury from rendering a lawful verdict and was an error of constitutional magnitude depriving the defendant of a fair trial." 251 Kan. at 802.

In an effort to apply the rationale of *Linn* to this case, the defendant isolates the portion of the contested instruction which mentions "participants to an underlying felony" and then points out that the instruction did not include the underlying felony or the elements of the underlying felony. He asserts that under the instruction given, the jury could have found him guilty of felony murder based on his admission of possessing property stolen from the homicide victims rather than based on the felonies contained in the judge's instructions on felony murder and the verdict form.

Jury instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and if the jury could not reasonably have been misled by them, the instructions do not constitute reversible error even though they may be in some small way erroneous. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 4, 874 P.2d 623 (1994).

We have reviewed the instructions and find that the defendant's argument is meritless. The jury was instructed in other instructions as to the elements of felony murder. Two instructions related to the felony murders based on the underlying crime of aggravated robbery, and another two related to felony murder based on the underlying crime of aggravated burglary. The elements of aggravated robbery and aggravated burglary were set out in each of those instructions. Although the term "underlying felony" was not defined in the instruction contested here, the other felony-murder

instructions required the jury to find that the killing of each victim "was done while in the commission of aggravated robbery [or aggravated burglary], a felony." The jury would apply its common knowledge and understand that the term "underlying felony" related to the felonies specified in the felony-murder instructions and the term "participants" meant all persons involved in the underlying felony. Moreover, to convict the defendant of felony murder, the felony-murder instructions required the jury to find that the murder was committed during the commission of aggravated robbery or aggravated burglary. These instructions, and the accompanying verdict forms, did not allow the jury to convict the defendant of felony murder based on the underlying crime of possession of stolen property, as the defendant suggests.

## Lesser Included Offense Instruction

The defendant next contends that the trial court erred in failing to instruct the jury on theft as a lesser included offense of the underlying felony of aggravated robbery as to the felony-murder charge. This court has recognized that the felony-murder doctrine is a distinct legal theory from the doctrine of lesser included offenses. See *State v. Gonzales*, 245 Kan. 691, 706, 783 P.2d 1239 (1989).

The defendant was charged with two counts of felony murder based on the underlying crime of aggravated robbery as alternatives to premeditated murder and to felony murder based on aggravated burglary in the deaths of Ashley and Price. The defendant argues that a lesser included offense of aggravated robbery is robbery and that theft is a lesser included offense of robbery; thus, theft is a lesser included offense of aggravated robbery as the basis for a felony-murder conviction. Based on this rationale, the defendant claims the judge was required to have included an instruction for theft as a lesser included offense of aggravated robbery.

K.S.A. 21-3107(3) requires the trial court to instruct the jury not only as to the crime charged but also as to all lesser included crimes of which the accused might be found guilty. This is an affirmative duty of the trial court and applies whether or not the defendant requests the instructions. *State v. Bowman*, 252 Kan. 883, 892, 850

P.2d 236 (1993). An instruction on a lesser included offense is required if there is substantial evidence upon which the defendant might reasonably have been convicted of the lesser offense. However, instructions on lesser included crimes of felony murder are required only if evidence of the underlying felony is weak or inconclusive. *Linn*, 251 Kan. 797, Syl. ¶ 4.

At the time of the defendant's crimes, the offense of first-degree felony murder was defined as "the killing of a human being committed . . . [i]n the perpetration of or attempt to perpetrate any felony." K.S.A. 1992 Supp. 21-3401(a). To prove felony murder under this statute, the State must prove that the defendant committed a felony inherently dangerous to human life and that a death occurred during the commission of that felony. *State v. Lashley*, 233 Kan. 620, 631, 664 P.2d 1358 (1983); *State v. Smith*, 225 Kan. 796, 799, 594 P.2d 218 (1979).

The elements of the crime of aggravated robbery are set forth in K.S.A. 21-3427 (Ensley 1988): a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person. K.S.A. 21-3426 (Ensley 1988). Theft is defined as any of the following acts done with the intent to deprive the owner permanently of the possession, use, or benefit of the owner's property: (a) obtaining or exerting unauthorized control over property; (b) obtaining by deception control over property; (c) obtaining by threat control over property; or (d) obtaining control over stolen property knowing the property to have been stolen by another. K.S.A. 21-3701 (Ensley 1988).

The defendant cites *State v. Blockman*, 255 Kan. 953, 956, 881 P.2d 561 (1994), as authority for his assertion that theft is a lesser included crime of aggravated robbery. However, *Blockman* established that not all types of theft are lesser offenses of robbery. In *State v. Long*, 234 Kan. 580, 675 P.2d 832 (1984), *overruled on other grounds State v. Keeler*, 238 Kan. 356, 365, 710 P.2d 1279 (1985), this court held that theft is an included crime of robbery. The method of theft in question there was under subsection (a) of 21-3701, obtaining or exerting unauthorized control over property.

In *Blockman*, 255 Kan. 953, Syl. ¶ 1, this court reaffirmed that theft under 21-3701(a) is a lesser included offense of robbery. The *Blockman* court held, however, that unlike common-law larceny, codified at 21-3701(a), there can be a robbery without a theft by threat. Therefore, theft by threat under 21-3701(c) is not a lesser included offense of the crime of robbery. 255 Kan. 953, Syl. ¶ 4, 961. See *State v. Rader*, 256 Kan. 364, Syl. ¶ 3, 885 P.2d 1222 (1994). The question of whether theft under 21-3701(b), obtaining by deception control over property, and 21-3701(d), obtaining control over stolen property knowing the property to have been stolen by another, are lesser included offenses of robbery was not an issue in *Blockman* or *Rader*.

We note that the defendant at trial denied he was involved in the burglaries but admitted that he was subsequently in possession of property taken during the burglaries. See 21-3701(d) (obtaining control over stolen property knowing the property to have been stolen by another).

Regardless of whether the different methods of theft are lesser included offenses of robbery, in *State v. Lashley*, 233 Kan. 620, this court recognized that only two types of theft under 21-3701 are inherently dangerous and may constitute underlying felonies for a charge of felony murder. The *Lashley* court stated: "K.S.A. 21-3701 incorporates two sections that are, when viewed in the abstract, offenses that are inherently dangerous to human life: (1) theft by obtaining or exerting unauthorized control over property— K.S.A. 21-3701(a); and (2) theft by obtaining control over property by threat—K.S.A. 21-3701(c)." 233 Kan. at 633. See K.S.A. 21-3436(a)(8), specifying that felony theft under 21-3701(a) and (c) are inherently dangerous felonies. The *Lashley* court also stated: "[W]e wish to emphasize that theft may be the underlying felony in a charge of felony murder only in cases where the discovery of the thief during the course of the theft results in the death of a person." 233 Kan. at 634.

*Lashley* determined that theft under 21-3701(d), possession of stolen property, cannot support a conviction for felony murder because it is not an inherently dangerous felony. 233 Kan. at 633. In addition, this type of theft (obtaining control over stolen property

knowing the property to have been stolen by another) requires that the control over the stolen property occur subsequent to the actual taking of the property. According to the defendant's argument, he obtained control over the stolen property after another person stole the property, so the defendant's own possession of the stolen property did not result in the death of a person; it would have been the other person's taking of the property that resulted in the death. See *Lashley*, 233 Kan. at 634. The trial court did not err in failing to instruct the jury on theft by possessing stolen property as a lesser included offense of felony murder.

### Insufficient Evidence

The defendant next asserts that the evidence of aggravated robbery was insufficient to convict him because there was no proof the victims were alive when their property was taken. The defendant concludes that if evidence of the underlying felony of aggravated robbery was insufficient, the convictions of first-degree felony murder are invalid. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, an appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Timley*, 255 Kan. 286, Syl. ¶ 13, 875 P.2d 242 (1994).

The defendant argues that if the victims were dead before their property was taken, the property was not taken from their presence and the crime of aggravated robbery could not have occurred. As a basis for this argument, the defendant cites cases where this court held that the crimes of aggravated kidnapping and rape require a living victim. See *State v. Evans*, 251 Kan. 132, 135, 834 P.2d 335 (1992); *State v. Perkins*, 248 Kan. 760, 771, 811 P.2d 1142 (1991). *Evans* and *Perkins* held that the crimes of kidnapping and rape required a living victim to protest the improper use of his or her body by another. Using a similar rationale, *State v. Kingsley*, 252 Kan. 761, 780-81, 851 P.2d 370 (1993), held that the crime of aggravated arson requires that a living person be in the structure. The *Kingsley* court reached this conclusion not because the crime

required the absence of consent of some person but because the policy behind elevating arson, a class C felony, to aggravated arson, a class B felony, was the risk to human life and safety, a risk present only if there was a living person in the structure. 252 Kan. at 781.

Aggravated robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person, committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3426 (Ensley 1988); K.S.A. 21-3427 (Ensley 1988). Applying the rationale of *Evans*, *Perkins*, and *Kingsley*, we agree that the crime of aggravated robbery does require a living victim at the time of the commission of the crime, but the defendant is incorrect in asserting that the victim must be alive at the time the property is taken.

In *State v. Myers*, 230 Kan. 697, 640 P.2d 1245 (1982), the defendant was convicted of voluntary manslaughter, aggravated robbery, and arson. The defendant shot the victim and then returned several hours later to make sure the victim was dead. Upon returning to the location of the body, the defendant removed the victim's wallet. 230 Kan. at 698. The defendant contended that the victim's wallet was taken from him 3 hours after the victim was killed, so the property was not taken by force or threat of force and the elements of aggravated robbery had not been established. The *Myers* court rejected the defendant's argument that the threat or force must be concurrent with the taking of the property. The court held:

"[U]nder factual circumstances where a defendant shoots his victim and later decides to take and remove the victim's personal belongings, where the act of force and the taking of the property are so connected as to form a continuous chain of events so that the prior force makes it possible for the defendant to take the property from the victim's body without resistance, that is sufficient for a conviction of the crime of robbery under K.S.A. 21-3426. Since the killing was accomplished with a dangerous weapon, a violation under K.S.A. 21-3427 [aggravated robbery] was established by the evidence." 230 Kan. at 703-04.

See *State v. Adam*, 257 Kan. 693, 698, 896 P.2d 1022 (1995); *State v. Patterson*, 243 Kan. 262, 267, 755 P.2d 551 (1988).

The evidence shows that the defendant entered the homes with a dangerous weapon, a tire iron, and inflicted bodily harm with that tire iron after entering the residences. The force and bodily harm was inflicted either immediately before, during, or immediately after the robberies. Under the facts, the possibility that Ashley and Price were deceased by the time the taking was completed does not render the evidence of aggravated robbery insufficient. The taking of property was not an afterthought. Rather, the act of force and bodily harm and the taking of the property from Ashley and Price were part of a continuous chain of events.

Defendant's argument is also flawed because in addition to being convicted of aggravated robbery, he was also convicted of aggravated burglary of the residences where the victims were murdered. Aggravated burglary is committed when one enters a dwelling where a human being is present to commit a felony or theft. K.S.A. 1992 Supp. 21-3716. The defendant does not dispute that Ashley and Price were killed by the burglars who took their property or that there was sufficient evidence to support the crime of aggravated burglary based on the intent to commit the crime of theft at the time of entry. Because the defendant intended to commit the crime of theft at the time he entered a dwelling in which a human being was present, the intended theft was converted to a robbery.

The defendant's convictions for the aggravated robberies of Ashley and Price were supported by sufficient evidence upon which a rational factfinder could have found him guilty of those crimes beyond a reasonable doubt. Because the convictions for aggravated robbery are affirmed, there is no need to address the corresponding argument that the first-degree felony-murder convictions are invalid.

## Aiding and Abetting Instruction

The defendant next claims that the trial court erred in instructing the jury on aiding and abetting. The trial judge is required to instruct the jury after the close of evidence on such matters as in the judge's opinion will assist the jury in considering the evidence presented. The judge is required to pass upon the objections to the

instructions and shall either give each instruction as requested, or proposed, or refuse to do so. K.S.A. 22-3414(3).

The defendant's counsel objected to the giving of an aiding and abetting instruction, claiming it relieved the State of its burden of proof. The trial judge noted there was testimony that two people were involved in committing several of the burglaries. The defendant's counsel agreed, but asserted that although the instruction was a correct statement of the law, the sequence in which the instruction was given to the jury improperly overemphasized the instruction. Although the trial judge offered to change the sequence of the instructions, the defendant's counsel declined the judge's offer.

The jury was instructed:

"A person who, either before or during its commission, intentionally aids or abets another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

This instruction follows the standard PIK instruction. It was given immediately following the jury instructions relating to the murder of Ashley. The defendant does not challenge the language of the instruction; rather, he claims that the evidence at trial precluded the giving of that instruction.

The defendant asserts on appeal that the only evidence another person was involved in the burglaries was the defendant's statement to the police, and his testimony at trial, that he drove another person to one burglary and had been the driver during other burglaries.

Contrary to the defendant's argument, however, we note other evidence that the defendant was involved in several of the burglaries with another person. Frank Thompson testified that the defendant asked him to assist in committing some burglaries, and Thompson agreed. Thompson testified that he acted as the lookout while the defendant entered the residences with a tire iron. Thompson also helped carry items out of the houses. In exchange for helping the defendant, Thompson received some of the stolen property. Further, there was evidence from the defendant's own

testimony that he was involved in at least one of the burglaries with another person. The defendant testified concerning count 68: "I was also at this location of this burglary, but I did not participate in the burglary, and I received a cable converter box for giving John Thompson a ride to this burglary." Although by this testimony the defendant denied participating in the burglary, he did admit to giving John Thompson a ride to the burglary.

Jury instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and if the jury could not reasonably have been misled by them, the instructions do not constitute reversible error even though they may be in some small way erroneous. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 4, 874 P.2d 623 (1994). Although the defendant was charged as a principal, under the facts of this case the jury could find him guilty as an aider and abettor. Neither the giving of nor the sequence of the aiding and abetting instruction was error.

## Double Jeopardy

The defendant acknowledges that the Kansas Legislature intended to allow conviction and punishment for both felony murder and the underlying felony, but he claims that the imposition of consecutive sentences for his convictions of first-degree murder and the underlying felonies violates the United States Constitution prohibition against double jeopardy. A violation of the prohibition against double jeopardy is a question of law, and this court's review is de novo.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall be subject to be twice put in jeopardy of life or limb for the same offense. The Clause is enforceable against the states via the Fourteenth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Equivalent double jeopardy protection is found in Section 10 of the Kansas Constitution Bill of Rights. See *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994). The Double Jeopardy Clause shields persons from "(1) a second prosecution for the same offense after acquittal, (2) a sec-

ond prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." 254 Kan. at 396. At issue here is the third protection, that against multiple punishments for the same offense.

The defendant acknowledges that it is the well-established law in Kansas that multiple convictions and punishments for both felony murder and the underlying felony are not violations of double jeopardy. See, *e.g.*, *State v. Gonzales*, 245 Kan. 691, 704, 783 P.2d 1239 (1989) (underlying felony of attempted rape); *State v. Dunn*, 243 Kan. 414, 433, 758 P.2d 718 (1988) (underlying felonies of aggravated kidnapping and aggravated robbery). The defendant contends, however, that these cases were incorrectly decided and requests this court to revisit the issue.

In *Gonzales*, 245 Kan. at 704, this court recognized that resolution of the double jeopardy issue depends on whether the Kansas Legislature intended to allow conviction and punishment for both felony murder and the underlying felony. The court held that the legislature, by not prohibiting the practice of multiple punishments for both felony murder and the underlying felony once it was aware of the practice, approved of the practice. 245 Kan. at 704-05. The *Gonzales* court also addressed an argument, similar to that of the defendant here, concerning the doctrine of lesser included offenses. The court stated:

"The flaw in defendant's argument is that he fails to recognize the distinction between the 'lesser included offense' doctrine and the 'felony-murder' doctrine. Each is a separate theory of law. Each exists in a distinct legal pigeonhole. . . .

"The appropriate test to apply to the instant case is found in *State v. Dunn*, 243 Kan. at 432-33, where the court stated:

'The constitutional prohibition against double jeopardy is directed to the identity of the offense and the act. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied when determining whether there are two offenses or only a single offense is whether each statutory provision requires proof of an element that the other does not. Where one statute [requires] proof of an element that the other does not, the crimes are not the same, even though proof of the separate crimes may substantially overlap.

. . . .

'We have held that the proper test for determining whether an underlying felony merges into a homicide is whether all the elements of the felony are present in the homicide and whether the felony is a lesser included offense of the homicide. If this is not true, then the felony must be a separate and distinct offense and the doctrine of merger does not apply. *State v. Rueckert*, 221 Kan. 727, 733, 561 P.2d 850 (1977). A more correct formulation of the proper test when considering merger is whether the elements of the underlying felony are so distinct from the homicide so as not to be an ingredient of the homicide. *State v. Lashley*, 233 Kan. 620, 631, 664 P.2d 1358 (1983).' " 245 Kan. at 706-07.

*Gonzales* and *Dunn* are not the only cases reaching this result. This court also concluded, following the *Gonzales* and *Dunn* analyses, that convictions for felony murder and the underlying felony did not violate double jeopardy in *State v. Johnson*, 258 Kan. 475, 905 P.2d 94 (1995) (aggravated kidnapping and aggravated robbery); *State v. Butler*, 257 Kan. 1043, 897 P.2d 1007 (1995), *modified on other grounds* 257 Kan. 1110,.916 P.2d 1 (1996) (aggravated robbery); *State v. Swafford*, 257 Kan. 1023, 897 P.2d 1027 (1995), *modified on other grounds* 257 Kan. 1091, 913 P.2d 196 (1996) (aggravated robbery); *State v. Sutton*, 256 Kan. 913, 889 P.2d 755 (1995) (aggravated kidnapping and aggravated robbery); *State v. Bailey*, 247 Kan. 330, 340, 799 P.2d 977 (1990), *cert. denied* 500 U.S. 920 (1991) (aggravated robbery); and *State v. Pioletti*, 246 Kan. 49, 785 P.2d 963 (1990) (aggravated kidnapping). The defendant has shown no compelling reason for us to depart from this well-established law and find that these cases were wrongly decided.

Affirmed.