No. 58,084

STATE OF KANSAS, *Appellee,* v. ALPHONSO D. SALTON, *Appellant.*

(715 P.2d 412)

Opinion filed February 21, 1986.

*Steven L. Islas,* of Wichita, argued the cause and was on the brief for the appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Neal B. Brady,* assistant district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: The appellant, Alphonso D. Salton, appeals his jury conviction of aggravated robbery (K.S.A. 21-3427), unlawful use of a financial card (K.S.A. 1985 Supp. 21-3729) and felony theft (K.S.A. 1985 Supp. 21-3701). The relevant facts are as follows.

At approximately 4:30 a.m. on September 5, 1983, Charles D. Heilman was delivering equipment to a building located at 780 E. Fifteenth Street in Wichita for his employer, Southwestern Bell Telephone Company. Ten to fifteen minutes after Mr. Heilman arrived at the building, he was approached by an unidentified black man who requested water for his car's overheating radiator. Heilman complied with the request, and the man departed, only to return about five minutes later, asking for more water. The man also stated he was hungry and thirsty. Heilman informed him there were vending machines inside the building. The man then indicated he needed change for a dollar bill and followed Heilman inside.

Once inside the building, Heilman turned his back to the individual to purchase some food for him. When he turned

around again, the man was holding a gun and told him, "This is a robbery. As long as you cooperate you won't get hurt."

Heilman later described the weapon as a long, blue steel handgun, possibly a .22 caliber. He estimated the gun had a six-inch barrel but acknowledged he did not know the exact length of the barrel. He also acknowledged he was unable to distinguish whether the gun was an automatic or a revolver.

The robber took Heilman's wedding ring, his wristwatch, his wallet and his personal and company keys. The wallet contained, among other things, a MasterCard bearing the name of Charles D. Heilman. The robber then directed Heilman to a different location in the building and told him to lie down on the floor. After remaining on the floor from thirty to forty-five minutes, Heilman got up and telephoned the Wichita Police Department.

Two days later, on September 7, 1983, an individual entered David's Sweetbrier store in Wichita, and purchased a number of items with a MasterCard credit card bearing the name of Charles D. Heilman. Ruby Moore, a salesperson at the store, positively identified the appellant, Alphonso Salton, as the person who presented the charge card of Charles D. Heilman for the purchases and whom she witnessed sign the charge slip receipts.

Tonette Fuller, an employee at David's Parklane store in Wichita, testified that on September 7, 1983, an individual purchased items at David's with a credit card bearing the name of Charles D. Heilman. She identified Salton as the person who presented the charge card and signed the receipts.

Ruby Moore also identified the appellant as the person whom she saw placing unpaid-for merchandise in his shopping cart beneath the items already purchased with the MasterCard. She notified Kelly Otis, a security officer, of her observations, and Mr. Otis then watched Salton leave the store with the unpaid-for merchandise. Mr. Otis identified the appellant as the individual who had removed the merchandise from the store and fled the scene after being confronted regarding the theft.

The appellant was charged with aggravated robbery, unlawful use of a financial card, theft and unlawful possession of a firearm. The jury returned a verdict of guilty on all but the charge of unlawful possession of a firearm.

The trial court sentenced Salton to a period of confinement of twenty to thirty years for aggravated robbery, three to fifteen

years for unlawful use of a financial card, and two to ten years for theft. The court later amended the theft sentence to not less than one year nor more than ten years pursuant to K.S.A. 1985 Supp. 21-4501(d).

The first question on appeal is whether the trial court erred in failing to require the appellant's presence at the commencement of his trial.

Prior to commencement of the trial, the trial court denied the appellant's request for a new attorney. Salton responded by declaring he was not ready for trial and would not be present in the courtroom. The trial court arranged for a sound system to be installed in the holding cell adjacent to the courtroom and then placed the appellant in the holding cell. The judge advised the appellant of his continuing right to be present at the trial and arranged a means for relaying any change in his decision to the court so he could immediately be admitted to the courtroom. Appellant persisted in his refusal to attend his trial.

The trial was resumed and voir dire and jury selection were completed in the appellant's absence. Upon the jury's entering the courtroom, the trial judge explained the appellant's absence and the fact that he could hear the proceedings.

Appellant now contends the trial court violated K.S.A. 1985 Supp. 22-3405(1) by not requiring his presence at the commencement of his trial. That statute provides:

"The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of the sentence, except as otherwise provided by law. In prosecutions for crimes not punishable by death, *the defendant's voluntary absence after the trial has been commenced in such person's presence shall not prevent continuing the trial to and including the return of the verdict.* A corporation may appear by counsel for all purposes." (Emphasis added.)

Focusing on the emphasized portion of the statute, the appellant argues that in order to comply with K.S.A. 1985 Supp. 22-3405, a trial court must require a defendant's presence at the *commencement* of his trial. Since the appellant here was not present at the commencement of his trial, appellant argues the trial was "irreparably tainted" from the outset.

Appellant's argument is unacceptable for a number of reasons. First, we have often held a litigant may not invite and lead a trial court into error, and then complain of the trial court's action on appeal. *State v. Falke,* 237 Kan. 668, 682, 703 P.2d 1362 (1985);

*State v. Gray,* 235 Kan. 632, 636, 681 P.2d 669 (1984). Here, the appellant's absence at the commencement of the trial was clearly voluntary. Prior to voir dire and jury selection, the trial judge informed the appellant of his continuing right to be present at trial. For this reason appellant cannot complain such action was error.

Second, appellant's contention would lead to absurd results. Under his scenario, if a defendant voluntarily chose to absent himself from trial, the trial judge would be compelled to delay the trial indefinitely, awaiting the defendant's cooperation, or, in the alternative, to physically force the defendant into the courtroom to insure his presence at the commencement of his trial. In our opinion such a result was not the legislature's intention in enacting K.S.A. 1985 Supp. 22-3405. Rather, we construe the statute to permit a trial judge to proceed with trial when the defendant freely and voluntarily waives his right to be present in the courtroom at the commencement of the trial.

We hold the trial court did not err in permitting the appellant to freely, knowingly and voluntarily waive his right to be present at the commencement of his trial.

Appellant next asserts error in the trial court's denial of his motion for mistrial. Appellant based his motion for mistrial upon two separate trial incidents.

Appellant first argues the testimony of State witness Officer Tom Mayhill was prejudicial and warranted a mistrial.

Mayhill testified at trial in his capacity as an expert forensic documents examiner. His testimony was limited to a discussion of his opinion of the signatures reflected on the credit card receipts. He testified that in his opinion, the maker of the signature of Charles Heilman was the same person for both receipts. During redirect examination, the witness was questioned regarding the various factors considered in forensic handwriting analysis and made the following statement:

"The last area that I consider, one of the last areas I consider is initial and final strokes. . . . Consideration here is also given to the initial stroke of, say, the letter W. To give an example, when I was back at the F.B.I. Academy one of the other document examiners from Wyoming asked, 'Have you ever seen a "W" like this,' and what he was referring to is what we in the documents field know as a black W. It's made in a particular way. Not commonly all black. It's seen most frequently at North High in Wichita, but it's not peculiar to the Black race. There are many white people that make it.

"So as a documents examiner you have to understand what's common and what's unusual because that becomes an important consideration in doing the examination."

Recognizing that this response was unsolicited, the appellant does not contend that this testimony should have been excluded. Rather, appellant argues the remark in question constituted a "racial slur" and warranted the granting of a mistrial. He contends the remark prejudiced him because the State never presented any testimony to the effect that the credit card receipts were signed by the appellant.

Officer Mayhill's remarks concerning characteristics of the letter W related only to the general characteristics considered in a handwriting examination. The letter W did not appear anywhere in the handwriting in evidence on State's exhibits one and two. Therefore, the jury could not infer from this testimony that a black man signed the credit card receipts in the name of Charles Heilman. Additionally, two witnesses had already identified the appellant as the person who signed the credit card receipts. Thus, the trial judge did not abuse his discretion in denying appellant's motion for mistrial.

Appellant also argues that the identification procedures utilized at trial rendered the trial court's denial of a mistrial an abuse of discretion. This argument relates to the following facts.

Upon completion of the direct and cross-examination of the robbery victim, Mr. Heilman, the trial court sustained the State's request to have the appellant present for in-court identification. Salton was brought in only after the jury was excused. After the jury returned, but before any further examination of the robbery victim, appellant announced, "Excuse me, I am sick all of a sudden. I am sick," and left the courtroom. Heilman proceeded to identify Mr. Salton as the man who had robbed him.

After an afternoon recess, the appellant was again brought into the courtroom for identification purposes after which he chose to stay in the courtroom for the remainder of the day. Once again, the jury was not present when the appellant entered the courtroom.

Appellant argues the trial court, by compelling his presence during the trial, created an unnecessarily suggestive identification of the appellant. He suggests the court should have required photographic identification rather than in-court identification,

since four witnesses had identified the appellant through photographs prior to trial.

This argument overlooks the language of K.S.A. 1985 Supp. 22-3405(1). It *permits* a defendant to voluntarily absent himself from the courtroom but does not give the defendant a *right* to do so. We so construe it. This distinction was discussed in *United States v. Moore*, 466 F.2d 547, 548 (3rd Cir. 1972), and *United States v. Fitzpatrick*, 437 F.2d 19, 27 (2nd Cir. 1970). The issue in those cases was whether under Rule 43 of the Federal Rules of Criminal Procedure, the federal counterpart to K.S.A. 1985 Supp. 22-3405, a trial court must allow a defendant to absent himself from trial. The federal courts held, and we agree, that the rule permits a trial court to continue a trial when the defendant absents himself, but does not concomitantly vest a right of absence in the defendant. See also *State v. Hartfield*, 9 Kan. App. 2d 156, 162, 676 P.2d 141 (1984), where this rule was discussed but found inapplicable to the facts at hand.

Since the appellant had no right to be absent from trial, the trial court did not err in requiring his presence in the courtroom for identification purposes. The motion for mistrial was properly denied.

The appellant next alleges the evidence was insufficient to support a conviction of aggravated robbery. Specifically, appellant contends the evidence was insufficient to show that he was armed with a dangerous weapon, as required for a conviction under K.S.A. 21-3427.

This contention centers, in part, upon the jury's acquittal of the appellant on the charge of unlawful possession of a firearm. Although the two verdicts might seem inconsistent, a review of the record shows there was sufficient evidence to support the jury's conviction of aggravated robbery.

When sufficiency of the evidence to support a conviction is challenged, the standard of review on appeal is whether the evidence, when viewed in a light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Zuniga*, 237 Kan. 788, 794, 703 P.2d 805 (1985).

The robbery victim, Charles Heilman, testified he had an opportunity to observe the weapon for approximately fifteen

seconds. He estimated the gun had a six-inch barrel but admitted he did not know its exact length. He further testified he would not have given the robber his property if he had not observed the gun.

Thus, there was clearly sufficient evidence upon which the jury could find the appellant was armed with a dangerous weapon and was guilty of aggravated robbery. The fact that this verdict seems inconsistent with the jury's acquittal of the appellant on the firearm charge does not constitute a basis for a finding of reversible error. As we have often held, a verdict, though inconsistent, is not erroneous if there is sufficient competent evidence to support it. *State v. Wise*, 237 Kan. 117, 122, 697 P.2d 1295 (1985).

Appellant's final point on appeal is that the trial court erred in denying his motion for a new trial. Appellant fails to allege any basis for his argument that the trial court abused its discretion in denying him a new trial.

The motion for a new trial filed with the trial court asserted the court erred in not granting appellant's motion for a mistrial and also challenged the sufficiency of the evidence to support the verdict. These points have already been addressed in our discussion of issues II and III and need not be repeated here. The trial court did not err in denying appellant's motion for new trial.

The judgment of the trial court is affirmed.

MILLER and LOCKETT, J.J., concur in the result.