No. 61,872

STATE OF KANSAS, *Appellee*, v. ROBERT GENE PROUSE, *Appellant*.

(767 P.2d 1308)

Opinion filed January 20, 1989.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Kerwin L. Spencer*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Robert Gene Prouse appeals his jury trial convictions of child abuse (K.S.A. 1987 Supp. 21-3609) and first-degree felony murder (K.S.A. 21-3401).

On February 15, 1987, defendant and his wife, Susan Prouse, brought their seven-week-old daughter, Felicity, to the emergency room of the Caldwell Hospital. The baby was not breathing. CPR was administered. Twenty minutes later Felicity was pronounced dead. The examining physician, Dr. Ray Stowers, observed multiple contusions and abrasions on the child's face and a large hematoma behind the right ear. He asked defendant how these injuries occurred. Defendant said the child had fallen from her crib two or three weeks earlier and that, a few days previously, the family cat had scratched the child's eyelid. Defendant further stated the child had received no injuries the day of her death, and she was not breathing when he found her. Dr. Stowers believed defendant's explanation was inconsistent with the observed injuries and notified the Sumner County Medical Examiner. An autopsy was performed the following day by Dr. David DeJong.

The autopsy revealed a traumatic separation of the parietal, occipital, and temporal bone plates. The parietal bone plate was totally loose and fell from the skull upon the rolling back of the scalp. A subdural hematoma consisting of clotted and liquified blood was observed. Multiple external bruises and contusions to the head were observed. There were no injuries to any part of the

body other than the head. Dr. DeJong concluded the injuries and death were the result of child abuse. The separation of the bony plates was due to a single localized blow occurring probably within hours of death but possibly within "a day or two before that." He stated the injury could not have resulted from a fall from her crib. Multiple blows to the head were the probable causes of the various contusions and abrasions.

The subsequent investigation revealed defendant had been alone with the child during the day in question until approximately 6:00 p.m. when the wife returned from work. Shortly after that the child was discovered not to be breathing. A babysitter had been with the child the day before. She observed no injuries except for the cat scratch over the eye. Defendant again stated there had been no accidental injuries on the day of the child's death and that nothing unusual had occurred.

Defendant was charged with first-degree felony murder and child abuse. He was also charged with involuntary manslaughter (K.S.A. 1987 Supp. 21-3404) and endangering a child (K.S.A. 21-3608). Defendant could not be found guilty of all four charges. He could be found guilty of (1) felony murder with child abuse as the collateral felony, or (2) involuntary manslaughter with endangering a child as the unlawful act not amounting to a felony, or he could be found not guilty. The jury found defendant guilty of first-degree felony murder and child abuse. Defendant appeals therefrom.

For his first issue, defendant contends the district court abused its discretion in admitting three of the nine autopsy photographs. The six unobjected-to photographs show the external injuries prior to any alteration of the body by autopsy. The three objected-to photographs show the internal head injuries with the scalp rolled back. Defendant contends the three photographs were gruesome, inflammatory, and repugnant.

The admission of photographs into evidence is within the discretion of the trial court unless it is shown such discretion is abused. *State v. Kendig*, 233 Kan. 890, 893, 666 P.2d 684 (1983).

A similar issue was raised in *State v. Lucas*, 243 Kan. 462, 759 P.2d 90 (1988), involving comparable photographs. In *Lucas*, Syl. ¶ 7, we held:

"Although special care must be taken in admitting photographs taken after the pathologist has intervened, lest the evidence be made more grisly than neces-

sary, those photographs which are relevant and material in assisting the jury's understanding of medical testimony are admissible." ·

The three photographs herein assisted the jury's understanding of Dr. DeJong's testimony as to the separation of the bones, the subdural hematoma, and the force necessary to cause such injuries. We find no abuse of judicial discretion in the admission of the photographs.

For his second issue, defendant contends the trial court erred in the admission of certain rebuttal testimony.

Defendant presented testimony that he was a person of great self-control who never became angry. Further, defendant testified "there isn't anything a child could do to upset me."

The State called Sherri Manske as a rebuttal witness. She testified she had lived with defendant from October 1984 to January 1985. Living with them were her four-month-old baby and another child about a year older. She testified that the baby's crying upset defendant and that he would cover up the baby's mouth to stop the crying. This happened several times even though she told him not to do it. She testified she had seen displays of temper by defendant and that he had become physically violent on one occasion by throwing the furniture around. The couple had split up over this last incident.

The use and extent of rebuttal evidence rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion was abused to a party's prejudice. *State v. Richard*, 235 Kan. 355, 360, 681 P.2d 612 (1984); *State v. Weigel*, 228 Kan. 194, 200, 612 P.2d 636 (1980); *State v. Lovelace*, 227 Kan. 348, 353, 607 P.2d 49 (1980).

In their briefs, the parties go off on a tangent as to whether or not the rebuttal testimony was precluded by K.S.A. 60-447, which provides:

"Subject to K.S.A. 60-448 when a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446, except that (a) evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible, and (b) in a criminal action evidence of a trait of an accused's character as tending to prove guilt or innocence of the offense charged, (i) may not be excluded by the judge under K.S.A. 60-445 if offered by the accused to prove innocence, and (ii) if offered by the prosecution to prove guilt, may be admitted only after the accused has introduced evidence of his or her good character."

K.S.A. 60-447 is inapplicable herein. The complained-of testi-

mony was not offered to prove guilt. Rather, the purpose of such testimony was to refute certain testimony introduced by defendant as to his great self-control and inability to become upset with a child. This was clearly proper rebuttal evidence.

As we held in *State v. Lovelace*, 227 Kan. 348, Syl. ¶ 7:

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice."

For his third issue, defendant contends it was error for the trial court to instruct the jury on felony murder because child abuse is not an independent collateral felony and, accordingly, merged into the felony-murder charge.

This same issue was before the court in *State v. Lucas*, 243 Kan. 462, which was decided subsequent to the trial herein. In *Lucas*, we analyzed the existing Kansas case law relative to felony murder, which was summarized in Syl. ¶¶ 1-4 as follows:

"The purpose of the felony-murder doctrine is to deter those engaged in felonies from killing negligently or accidentally, and the doctrine should not be extended beyond its rational function which it was designed to serve."

"In order to apply the felony-murder doctrine: (1) the underlying felony must be one which is inherently dangerous to human life; and (2) the elements of the underlying felony must be so distinct from the homicide so as not to be an ingredient of the homicide."

"In determining whether an underlying felony is inherently dangerous to human life so as to justify a charge of felony murder, the elements of the underlying felony should be viewed in the abstract, and the circumstances of the commission of the felony should not be considered in making the determination."

"Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and, therefore, subject to the felony-murder rule."

The collateral felony must, therefore, be felonious conduct other than the lethal act itself. Thus, a homicide occurring during the commission of an independent felony, such as aggravated robbery, rape, or kidnapping, comes under the felony-murder statute (K.S.A. 21-3401). However, the lethal act itself cannot

serve as the independent collateral felony necessary to support a felony-murder conviction. Thus, an aggravated battery (K.S.A. 21-3414) resulting in the death of the victim merges into the homicide and cannot serve as the collateral felony for felony-murder purposes. For further illustration, consider the situation where a robber shoots the victim during the commission of an aggravated robbery. If the victim lives, the robber could be convicted of the two separate felonies he or she committed—aggravated battery and aggravated robbery. If the victim dies as a result of the injuries so received, the robber may still be convicted of two felonies—felony murder and aggravated robbery. However, if the only felonious conduct involved is the cause of the victim's death, then the doctrine of merger prevents the prosecution from splitting the act into a felony murder and a collateral felony charge. Therefore, an aggravated battery cannot serve as the collateral felony for felony murder. We then held in *Lucas* that designating an aggravated battery against a child as child abuse does not avoid the merger doctrine and result in two independent felonies. Specifically, we held in *Lucas*:

"A single assaultive incident of abuse of a child (K.S.A. 1987 Supp. 21-3609) which results in the death of a child merges with killing and constitutes only one offense. The coupling together of prior acts of abuse of a child with the lethal act of abuse into one collective charge of abuse of a child does not prevent the operation of the merger rule. Language to the contrary found in *State v. Brown*, 236 Kan. 800, 696 P.2d 954 (1985), is disapproved." 243 Kan. 462, Syl. ¶ 5.

We further observed:

"If additional protection for children is desired, the Kansas Legislature might well consider legislation which would make the death of a child occurring during the commission of the crime of abuse of a child, or aggravated battery against a child, first- or second-degree felony murder." 243 Kan. at 473.

We granted a rehearing in *State v. Lucas*. The original opinion therein has been affirmed this date. 244 Kan. 193, 767 P.2d 1308 (1989). In accordance therewith, the first-degree felony murder and child abuse convictions must be reversed and the case remanded for trial on appropriate charges.

For his fourth issue, defendant contends the trial court erred in failing to instruct on the full range of lesser homicide offenses. By virtue of the result reached in the preceding issue, this issue is moot.

For his final issue, defendant contends the trial court erred in requiring the prosecution to elect between two theories of the

means of commission of the involuntary manslaughter charge and in instructing the jury on the sole remaining theory as to the means of commission.

As will be recalled, the jury was instructed on alternative counts. Defendant could have been: (1) convicted of felony murder and child abuse; (2) convicted of involuntary manslaughter and endangering a child; or (3) found not guilty. These instructions parallel the information except that the involuntary manslaughter charge in the information provided two means of its commission as follows:

"and on or about February 15, 1987 said Robert Gene Prouse, in Sumner County, Kansas did then and there unintentionally kill a human being, to-wit: Felicity Prouse; without malice, while in the wanton commission of an unlawful act not amounting to a felony, to-wit: Endangering a Child by causing or permitting her to suffer unjustifiable physical pain or mental distress or to be placed in a situation where her life, body, or health were endangered in violation of K.S.A. 21-3608; said unlawful act being prohibited by a statute enacted for the protection of human life or safety; or did unintentionally kill a human being, to-wit: Felicity Prouse; without malice while in the commission of a lawful act, to-wit: disciplining Felicity Prouse; in an unlawful or wanton manner, to-wit: by striking her head or causing her head to strike another object as a means to stop some behavior by the child such as crying which said Robert Prouse did not approve of. K.S.A. 21-3404 INVOLUNTARY MANSLAUGHTER Class D Felony."

K.S.A. 1987 Supp. 21-3404 defines involuntary manslaughter as:

"(a) Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner.

"(b) As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state, which statute or ordinance is enacted for the protection of human life or safety."

The involuntary manslaughter charge herein used endangering a child as the unlawful act element for one means of committing the crime, and the doing of a lawful act in an unlawful or wanton manner for an alternative means of commission of the crime. On its own motion, the trial court forced the State to elect as to the means of commission. Defense counsel made no objection to the forced election and did not request both theories of commission be submitted to the jury. In fact, defendant's proposed instruction included only the first theory of commission. A litigant may not invite and lead a trial court into error and then

complain of the trial court's action on appeal. *State v. Salton*, 238 Kan. 835, Syl. ¶ 1, 715 P.2d 412 (1986). Further, we are satisfied this matter had no bearing on the outcome of the trial.

We believe, however, that it is appropriate to address the matter as it could arise again in a retrial herein. The defense cites cases dealing with a trial court's duty to instruct on all lesser included offenses pursuant to K.S.A. 1987 Supp. 21-3107(3). Involuntary manslaughter was a charged crime, not a lesser included offense herein. Likewise, this does not involve an amendment of an information by the State. Rather, the effect was the trial court deleted part of the charge on its own motion.

Inasmuch as the involuntary manslaughter charge in the information was one count alleging two different means of commission, presumably the instruction and verdict form would have presented the whole charge to the jury without the court's intervention. Hence, had defendant been convicted of involuntary manslaughter, it would be impossible to determine which means of commission the jury had found occurred. A challenge to the sufficiency of the evidence supporting the conviction would reveal this problem.

We believe that the proper method to be employed would be to charge the two different alleged means of commission as alternative counts of involuntary manslaughter. This would separate the elements instructions and the verdict forms and enable a reviewing court to determine precisely what the jury found. Further, it would prevent the jury from hybridizing the two means into some means of commission not specified in the statute defining involuntary manslaughter.

This conclusion is consistent with *State v. Saylor*, 228 Kan. 498, 618 P.2d 1166 (1980), wherein we held:

"It has long been the law of Kansas that an accusatory pleading in a criminal action may, in order to meet the exigencies of proof, charge the commission of the same offense in different ways. In such a situation, a conviction can be upheld only on one count, the function of the added counts in the pleading being to anticipate and obviate fatal variance between allegations and proof. Thus, it has been held proper to charge by several counts of an information the same offense committed in different ways or by different means to the extent necessary to provide for every possible contingency in the evidence. *Williams v. Darr*, 4 Kan. App. 2d 178, 180-81, 603 P.2d 1021 (1979); *State v. Hagan*, 3 Kan. App. 2d 558, 598 P.2d 550 (1979); *State v. Pierce, et al.*, 205 Kan. 433, 469 P.2d 308 (1970); *State v. Emory*, 116 Kan. 381, 226 Pac. 754 (1924); and *State v. Harris*, 103 Kan. 347, 175 Pac. 153 (1918).

"Where there is a question in the mind of the prosecutor as to what the evidence will disclose at trial, the correct procedure is to charge the defendant in the alternative under those subsections of K.S.A. 1979 Supp. 21-3701 which may possibly be established by the evidence. This may properly be done under Kansas law by charging several counts in the information to provide for every possible contingency in the evidence. By so doing, the jury may properly be instructed on the elements necessary to establish the crime of theft under any of the subsections charged and the defendant will have no basis to complain that he has been prejudiced in his defense." 228 Kan. at 503-04.

The defendant's convictions of first-degree felony murder and child abuse are reversed and the case is remanded for trial on appropriate charges.

HOLMES, J., concurring: As the author of the majority opinion in *State v. Brown,* 236 Kan. 800, 696 P.2d 954 (1985), and one of the dissenting justices in *State v. Lucas,* 243 Kan. 462, 759 P.2d 90 (1988), I feel obligated to comment upon my change of position as reflected by my joining with the majority in the present case.

It has been said that hard facts often make bad law. *Brown* was one of those cases. The unusual factual and procedural background of *Brown* need not be repeated here. Suffice it to say, the decision in *Brown* was motivated, in my opinion, by a sincere desire to reach the "right" result, but in doing so, the court lost sight of the applicable law of this state. In *Lucas,* the facts were so revolting and the actions of the defendant so heinous that I felt the law established by *Brown* was applicable and correct. I am now convinced that my position was not supported by the prior case law of Kansas, nor by that of most other states with statutes similar to our felony-murder statute.

Kansas has recognized the felony-murder rule since before statehood. Kan. Terr. Stat. 1855 ch. 48 § 1 provided in part:

"Every murder . . . which shall be committed in the perpetration, or attempt to perpetrate any . . . felony, shall be deemed murder in the first degree."

In *State v. Fisher,* 120 Kan. 226, 243 Pac. 291 (1926), this court adopted the merger limitation to the broad application of the statute to "any felony." In *Fisher* the defendant fired a gun at a car full of people trespassing upon and damaging his property and one of the shots killed a four-year-old occupant of the car. The driver of the vehicle had cut Fisher's fences and was driving through his wheat field. After four fences had been cut, Fisher attempted to stop the driver by shooting at the tires and gasoline tank of the car. Unfortunately, one shot hit the young child in the

car, killing him. Fisher was found guilty of murder in the first degree based upon the felony-murder rule. In reversing the conviction, Justice Harvey, writing for the court, stated:

"It is the contention of the state that if murder is committed in the perpetration or the attempt to perpetrate any other felony, it is murder in the first degree; hence, that if the boy, John Michael Foley, met his death at the hands of defendant, while defendant was committing an assault with a deadly weapon, under such circumstances that it amounted to a felony under any statute pertaining thereto, the offense is murder in the first degree. This contention cannot be sustained. The effect of it would be to make any homicide, not excusable or justifiable, which by our statute is defined to be manslaughter in any of the degrees, or murder in the second degree, to constitute murder in the first degree. In other words, there could, under this interpretation of the statute, be no such thing as any lower degree of homicide than murder in the first degree. In 29 C.J. 1107, it is said:

" 'Under a statute making the unintentional killing of another while engaged in the commission of a felony murder in the first degree, the other elements constituting the felony must be so distinct from that of the homicide as not to be an ingredient of the homicide indictable therewith or convictable thereunder." (See, also, cases there cited.)'

". . . Here the act of the defendant in doing the shooting is either murder in the first degree or some other offense. That same act cannot be made the basis, first, of some other felony, as manslaughter, and then that felony used as an element of murder in the first degree." 120 Kan. at 230-31.

The merger doctrine, as adopted in *Fisher*, has been the law of Kansas since at least 1926. Later, the court imposed an additional limitation on the broad language of the felony-murder rule and required that the underlying felony must be "inherently dangerous" to support a charge of murder in the first degree based upon the perpetration of a felony. *State v. Moffitt*, 199 Kan. 514, 431 P.2d 879 (1967), *overruled on other grounds State v. Underwood*, 228 Kan. 294, 615 P.2d 153 (1980). Both court-imposed limitations are generally recognized as furthering the actual purpose and legislative intent of the statute. See *State v. Lucas*, 243 Kan. 462, Syl. ¶¶ 1, 2; Note, *Criminal Law—Felony Murder in Kansas—The Prosecutor's New Device: State v. Goodseal*, 26 Kan. L. Rev. 145 (1977).

I am now convinced that the attempt to graft an exception on the limitation imposed by *Fisher* is erroneous and not supported by any valid legal principle. If the merger doctrine is good law, and I think it is, then any attempt to carve out an exception to cover unintentional or accidental deaths resulting from child abuse should be done by the legislature. If the legislature be-

lieves that such an exception should be the law, it should adopt such a statute. Until it does, the limitations imposed upon the broad language of the statute remain the law of Kansas. I concur in the majority opinion.

SIX, J., dissenting: I dissent from the felony-murder portion of the majority opinion. The majority reasons it was error for the trial court to instruct the jury on felony murder because child abuse is not an independent collateral felony and accordingly merged into the felony-murder charge. The majority opinion quotes *State v. Lucas*, 243 Kan. 462, Syl. ¶ 5, 759 P.2d 90 (1988), *aff'd* 244 Kan. 193, 767 P.2d 1308 (1989):

"A single assaultive incident of abuse of a child (K.S.A. 1987 Supp. 21-3609) which results in the death of a child merges with killing and constitutes only one offense."

I disagree. I would affirm the trial court on all issues raised in this appeal.

In my view, the felony-murder rule applies in K.S.A. 1987 Supp. 21-3609 (child abuse) cases whether death results from facts which show a continuing course of conduct or a single act of child abuse.

Prouse was convicted of first-degree murder under K.S.A. 21-3401:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation or committed in the perpetration or attempt to perpetrate *any* felony.

"Murder in the first degree is a class A felony." (Emphasis added.)

He was also found guilty of the felony of child abuse under K.S.A. 1987 Supp. 21-3609:

"Abuse of a child is willfully torturing, cruelly beating or inflicting cruel and inhuman corporal punishment upon any child under the age of 18 years."

Under the felony-murder doctrine, when a death occurs in the course of a felony, the intent to commit the felony is transferred to the act of killing in order to find culpability for the homicide. The rule serves the purpose of relieving the State of the burden of proving premeditation or malice. A strategic advantage is thus provided to prosecutors. The theory is that proof of intent to commit the underlying felony is sufficient to show a guilty mens rea for murder. *State v. Rueckert,* 221 Kan. 727, 730, 561 P.2d 850 (1977). The history of the felony-murder rule began in Kansas

with our territorial government. Kan. Terr. Stat. 1855 ch. 48 § 1. For a detailed analysis of the history, rationale, and criticism of the felony-murder rule see, Note, *Criminal Law—Felony Murder in Kansas—The Prosecutor's New Device: State v. Goodseal*, 26 Kan. L. Rev. 145 (1977). England, where the doctrine originated, abolished the rule in 1957. The Homicide Act, 1957, 5 & 6 Eliz. 2, ch. 11, § 1. The great majority of states which follow the doctrine subject it to two limitations: (1) The underlying felony must be inherently dangerous to human life; and (2) the elements of the underlying felony must be so distinct from the homicide so as not to be an ingredient of the homicide. See Annot., *Application of Felony-Murder Doctrine Where the Felony Relied Upon is an Includible Offense with the Homicide*, 40 A.L.R.3d 1341. This court has adopted both limitations. *State v. Lashley*, 233 Kan. 620, 631, 664 P.2d 1358 (1983); *State v. Fisher*, 120 Kan. 226, 231, 243 Pac. 291 (1926).

This court, in 1985, reviewed child abuse and felony murder in *State v. Brown*, 236 Kan. 800, 696 P.2d 954 (1985). The facts in *Brown* are similar to those in this case. Felicity Prouse was seven weeks old when she died. *Brown* involved the death of a month-old baby boy who showed signs of severe neglect and abuse.

In *Brown*, the court stated that an offense of child abuse did not merge into a charge of felony first-degree murder. I agree with the observation made in *Brown*. "*It is obvious from even a cursory reading of the statutes that a charge of abuse of a child does not meet the* Rueckert *test for merger into a charge of felony first-degree murder*." 236 Kan. at 803. (Emphasis added.)

We should not overrule *Brown*.

Child abuse is a felony inherently dangerous to human life. *State v. Lucas*, 243 Kan. at 466. I agree with the majority that we are to consider the elements of the collateral felony in the abstract.

We should apply the same logic to a child abuse felony-murder analysis as we apply to other felonies deemed inherently dangerous to human life.

In overruling *Brown*, *Lucas* holds that the test for merger is more correctly stated as being whether the elements of the underlying felony are so distinct from the homicide so as not to be an ingredient of the homicide. 243 Kan. at 469.

The majority, in citing *Lucas,* reasons that had an adult been beaten on the head and drowned in a pool of water, the court would not hesitate in holding that the aggravated battery (the beating) was an intregral part of the homicide. The collateral "adult victim" felony merged with the homicide. *Lucas,* 243 Kan. at 470. The majority inquires: "Can a different result logically be reached by designating the beating as abuse of a child rather than aggravated battery?" The majority's answer is, "No." *Lucas,* 243 Kan. at 470. I disagree.

In my view, K.S.A. 1987 Supp. 21-3609, the child abuse statute, is support for application of the felony-murder rule. The current Kansas criminal code was adopted in 1969. K.S.A. 21-3101. Subsection (1) of K.S.A. 21-3102 states:

"No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state . . . ."

The statutory history of K.S.A. 21-3102(1) indicates:

"Subsection (1) restates, but does not change the law of Kansas. Common law crimes are abolished in that the judiciary has no power to find and punish crimes not defined by legislative authority."

The legislature has characterized child abuse as a class D felony.

The elements of child abuse are not the "ingredients" of a first-degree murder charge.

I agree with the reasoning of this court in *State v. Rueckert,* 221 Kan. 727, Syl. ¶ 6: "The proper test for determining whether an underlying felony merges into a homicide is whether all the elements of the felony are present in the homicide and whether the felony is a lesser included offense of the homicide."

I defer to the legislature. The legislature has extended an option to prosecutors by designating the beating of a child as child abuse, K.S.A. 1987 Supp. 21-3609, or aggravated battery, K.S.A. 21-3414. Neither the authority nor the wisdom of the legislature, in adopting the child abuse statute, has been questioned. I suggest that there is no more dominant thread in either the legislative or the judicial fabric than the recognition of children as a protected class. The examples of that recognition are legion and require no citation.

Such a finding is consistent with our public policy underlying the felony-murder rule (to deter all those engaged in felonies

from killing negligently or accidentally, *State v. Brantley*, 236 Kan. 379, 380-81, 691 P.2d 26 [1984]).

In addition to the deterrence concept as an underlying purpose of the felony-murder rule, I suggest that the rule serves the objective of proportional justice.

"Such diverse philosophers and judges as Jeremy Bentham, H. L. A. Hart, Sir James Fitzjames Stephen, Joel Feinberg, and Chief Justice Warren Burger have noted the disrespect that the law engenders when its response is disproportionate to public evaluations of the severity of an alleged violation." Crump & Crump, *In Defense of the Felony Murder Doctrine*, 8 Harv. J.L. & Pub. Pol'y. 359, 362 (1985).

I agree with the observation: "The homicide of a child in the course of an effort to injure him can be seen as a very serious crime in the scale of offense grading because of the vulnerability of the child." Crump & Crump, at 832.

In my view, the underlying or collateral felony, child abuse, K.S.A. 1987 Supp. 21-3609, supplies the necessary culpable mental state for the murder conviction. The crime of child abuse is not a lesser included offense to the crime of murder; consequently, it is distinct from and not an ingredient of the homicide.

The underlying or collateral felony in Prouse's case, child abuse, does not merge. See *Ex Parte Easter*, 615 S.W.2d 719 (Tex. Crim.), *cert. denied* 454 U.S. 943 (1981).

Prouse's convictions of first-degree felony murder and child abuse should be affirmed.

HERD, J., joins in the foregoing dissenting opinion.

MILLER, C.J., dissenting.